# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL DOCKET NO. 3:17-CR-039-FDW-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| DERRELL ROMARIO BLACK, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant Derrell Romario Black's "Motion To Suppress Evidence" (Document No. 15) filed June 16, 2017. The pending motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, as well as the testimony, exhibits, and arguments presented at a hearing on July 27, 2017, the undersigned will recommend that the motion be denied.

## PROCEDURAL BACKGROUND

Defendant Derrell Romario Black ("Defendant" or "Black") was indicted on February 21, 2017 on a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (Document No. 10). On June 16, 2017, Defendant filed a "Motion To Suppress Evidence" (Document No. 15), asserting that the firearm that forms the basis of the charge in this case was seized in violation of the Constitution. Specifically, the issue presented by the motion is whether the contact between the law enforcement officer and Defendant was a legal Terry stop and frisk. The Court finds that it was.

## FACTUAL SUMMARY

As noted, the Court conducted a hearing on this matter on July 27, 2017, at which both the Government and Defendant presented evidence and argument. Specifically, during that proceeding, the Court heard the testimony of Officer P.F. Blue and Ms. Crystal Johnson, as well as arguments from counsel for both the Government and Defendant. The Court also admitted exhibits, including Officer Blue's "Incident Report" and several photographs of the scene, the Midnight Diner in Charlotte, North Carolina. The following is a concise summary of the relevant facts.

The Government presented the testimony of Officer P.F. Blue. Officer Blue has been a Charlotte-Mecklenburg Police Officer for approximately nine years, during all of which he has been assigned to patrol. Blue estimated that he has made in excess of 100 arrests and has conducted more than 50 "stop and frisks" during his service. On November 12, 2016, in the early morning hours, Blue was working an off-duty security job, in uniform, at the Midnight Diner on Carson Boulevard in Charlotte, North Carolina.

Blue testified that at approximately 3:50 AM, he was standing near the hostess stand inside the restaurant. Blue described the design of the entry to the Midnight Diner, which features an outer door, a vestibule area, and an inner door that opens into the restaurant. Blue testified that several patrons, as many as five to seven, came into the restaurant and pointed toward the vestibule, indicating there was a person there arguing who had pulled a gun. Blue indicated he heard a "commotion" coming from the vestibule area, which was only a few feet away.

Based on what he had been told by the patrons, Blue went into the vestibule area and saw Defendant and others arguing. Blue testified there was a lot of yelling, cursing, and pointing back and forth, and that Defendant's girlfriend appeared to be trying to push Defendant out of the

vestibule toward the outside of the restaurant. Several additional people inside the vestibule told Blue that Defendant had pulled a gun.

Blue walked outside the restaurant to follow Defendant. Defendant moved away from Blue, and Blue told him to stop. Blue told Defendant he had to frisk him, and during the frisk, Blue felt what he thought was the handle of a firearm. Blue then removed what turned out to be a pink and black handgun from Defendant's waistband. Defendant was arrested on state charges at the time, including carrying a concealed weapon and possession of a firearm by a convicted felon.

After arresting Defendant, Blue returned to the restaurant and located some of the patrons whom he had spoken to about Defendant earlier. Generally, they confirmed their earlier statements to Blue, but they declined to be involved and did not provide identifying information.

During his testimony, on both direct and cross examination, Blue acknowledged that he has been disciplined at least twice during his service on the Charlotte-Mecklenburg Police Department. One of the incidents involved an improper search, and the other pertained to an allegation of using his official status to gain improper access to a commercial establishment.

Defendant presented the testimony of Ms. Crystal Johnson, Defendant's girlfriend. On the night in question, Ms. Johnson was with Defendant at the Midnight Diner. Johnson testified about the configuration of the doors at restaurant and stated she was waiting with Defendant in the vestibule to be seated. Johnson acknowledged that an argument broke out, and she testified that she "did not see" if patrons went into the restaurant from the vestibule to talk to Officer Blue. Johnson testified that Blue tried to stop Defendant as they were leaving, grabbed him, and threw him up against a car.

On cross-examination, Johnson conceded that the argument in the vestibule involved cursing and yelling. Johnson also testified that during the argument, she heard "the racking of a

gun," though she did not specify what gun, or by whom.  Johnson further testified that she and Defendant arrived together in the same vehicle, that she owns more than one firearm, and that the pink and black 9mm handgun found on Defendant is hers.  While Johnson denied "pushing" Defendant out of the vestibule, she did testify that they were standing in the doorway to the outside at the time of the argument.

## SELECTED AUTHORITY

An officer may stop and briefly detain a person for investigative purposes (known as an investigative or Terry stop) when there is "reasonable suspicion," based on articulable facts, that criminal activity is afoot.  Illinois v. Wardlow, 528 U.S. 119, 124 (2000);  United States v. Sokolow, 490 U.S. 1, 7 (1989);  Terry v. Ohio, 392 U.S. 1, 30 (1968).  Whether there is reasonable suspicion depends on the totality of the circumstances, including the information known to the officer and any reasonable inferences to be drawn at the time of the stop.  United States v. Arvizu, 534 U.S. 266 (2002) (reaffirming "totality of the circumstances" test);  United States v. Foster, 824 F.3d 84, 89 (4th Cir. 2016);  United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008); United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989).

The legitimacy of an investigative stop turns on what constitutes "reasonable suspicion," which the Fourth Circuit has called "a common sense proposition . . . [properly] crediting the practical experience of officers who observe on a daily basis what transpires on the street."  United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993).  Accord Arivizu, 534 U.S. at 273 (permitting "officers to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (internal quotation omitted).  Because the intrusion created by an investigative stop is minimal, the reasonable suspicion standard is not onerous.  See, e.g., United States v. Glover, 662

F.3d 694, 698-700 (4th Cir. 2011). On the other hand, neither an officer's reliance on a "mere hunch," Arvizu, 534 U.S. at 274, nor an uncorroborated anonymous tip, is sufficient to establish reasonable suspicion. Accord Florida v. J.L., 529 U.S. 266, 270-274 (2000) (anonymous telephone tip that young black male at bus stop wearing a plaid shirt was carrying a gun did not constitute "reasonable suspicion").

Information received from an anonymous source can establish reasonable suspicion when it includes "sufficient indicia of reliability." United States v. Elston, 479 F.3d 314, 318 (4th Cir. 2007), cert. denied, 550 U.S. 927 (2007). Whether an anonymous tip is sufficiently reliable to establish reasonable suspicion depends upon the totality of the circumstances. See, e.g. Reaves, 512 F.3d at 126; and Perkins, 363 F.3d at 324. The Fourth Circuit has afforded additional credibility to what it has called "face-to-face" tips, which are deemed "more trustworthy and reliable than [tips from anonymous sources]." United States v. Lawing, 703 F.3d 229, 237 (4th Cir. 2012) cert. denied, 133 S.Ct. 1851 (2013), (quoting United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000), cert. denied, 531 U.S. 1098 (2001)).

**DISCUSSION**

This is a straightforward matter. By the pending motion, Defendant asserts that "Officer Blue engaged in what the Supreme Court has labeled as an 'investigatory' stop which *must* be supported by a reasonable articulable suspicion." (Document No. 15, p.2). Defendant summarizes the level of suspicion deemed reasonable under the Fourth Amendment for three distinct police-citizen encounters, as follows:

> "(1) arrest, which [must] be supported by probable cause; (2) *brief investigatory stops, which must be supported by reasonable articulable suspicion*; and (3) brief encounters between police and citizens which require no objective justification."

Id. (quoting United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002)).

5

Defendant contends that Officer Blue "acted without independent articulable suspicion," because his "reasonable suspicion was based solely on the anonymous tip of an unknown diner patron." Id. In his pleading and at oral argument, Defendant cites for support Florida v. J.L., 529 U.S. 266 (2000) (anonymous telephone tip that young black male at bus stop wearing a plaid shirt was carrying a gun did not constitute "reasonable suspicion").

The Government in response notes that

> Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot. *See United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989). A *Terry* stop must be based on "at least a minimal level of objective justification," but the standard for reasonable suspicion is less demanding than for probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

(Document No. 16, p.3).

Here, the Government argues that pursuant to Terry, Officer Blue had reasonable suspicion to conduct an investigatory stop based on the statements of multiple diner patron witnesses, some of whom were also victims of the alleged crime. The evidence before the Court indicates that patrons informed Officer Blue that there was an argument in the vestibule and/or outside and a man had a gun, then patrons in or near the vestibule specifically identified Defendant as possessing a gun that he had pointed at some of them. Officer Blue himself testified that he heard the confrontation, including yelling and cursing. In short, the Government asserts that this is not an anonymous tip case at all.

The Government is correct. The tip here was face-to-face, in contrast to an anonymous tip. Moreover, it was contemporaneous and proximate to the underlying events that were still unfolding as Officer Blue confronted the arguing patrons of the diner. In all the ways that matter, the testimony of Officer Blue and that of Ms. Johnson are largely reconcilable. In any event, the

undersigned found the testimony of Officer Blue very credible and credits his version of the events. The testimony clearly establishes a legal Terry stop based on reasonable suspicion leading to the seizure of the firearm.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Derrell Romario Black's "Motion To Suppress Evidence" (Document No. 15) be **DENIED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED.**

Signed: August 18, 2017

David C. Keesler
United States Magistrate Judge